IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 3:16-CR-562-N |
| MARK DEMETRI STEIN (01) | |

## FACTUAL RESUME

In support of Mark Stein's plea of guilty to the offense in Count Two of the indictment, Stein, the defendant, Robert Webster, the defendant's court-appointed attorney, and the United States of America (the government) stipulate and agree to the following:

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count Two of the indictment, charging a violation of 18 U.S.C. §§ 1341 and 2, that is, Mail Fraud, Aiding and Abetting, the government must prove each of the following elements beyond a reasonable doubt:[1]

*First.* That the defendant knowingly devised or intended to devise a scheme to defraud, that is the scheme to make false representations to defraud vulnerable homeowners as charged in the indictment;

*Second.* That the scheme to defraud employed false material representations;

*Third.* That the defendant caused something to be sent and delivered through the United States Postal Service for the purpose of executing such scheme or attempting to do so; and

*Fourth.* That the defendant acted with a specific intent to defraud.

---

[1] Fifth Circuit Pattern Jury Instruction 2.56 (5th Cir. 2015)

Factual Resume—Page 1

## STIPULATED FACTS

1.  During the period from at least May 2012 through September 2012, Mark Demetri Stein, Richard Bruce Stevens, Bruce Kevin Hawkins, and Christina Renee Caveny, each defendant acting personally as a member of the scheme or, at times, as an aider and abettor in furtherance of the scheme, knowingly caused to be sent, delivered, and moved by the United States Postal Service, or by private and commercial interstate carrier, according to the directions thereon, a package containing certain materials. Some such materials sent by the United States Postal Service were loan statements mailed for the purpose of executing and attempting to execute the scheme and artifice to defraud.

2.  As charged in Count Two of the indictment, on or about May 1, 2012, defendant Stevens caused a loan statement to be mailed from Real Estate Solutions in Garland, Texas to homeowner A.C., residing on Castlewood Drive in Garland, Texas. This loan statement was mailed to homeowner A.C. and requested that homeowner A.C. make a monthly mortgage statement.

3.  Sometime in spring, 2012, Stevens recruited Stein to assist him in forming companies intended to help homeowners facing foreclosure. Stevens formed companies called Texas Holding and Texas Real Estate Services; Stein created Real Estate Solutions. Initially, Stein offered his homeowner customers options to avoid foreclosures, including loan modifications and other negotiated resolution plans techniques with mortgage lenders. Stevens referred homeowners to Stein in exchange for a share of proceeds.

Factual Resume—Page 2

4. Also in the spring 2012, Stein, at the request of Stevens, changed the Real Estate Solutions business model, shifting from loan modifications to wraparound notes. Stevens was concerned that loan modifications did not provide sufficient cash flow. Stein developed the "Angel Financing" program whereby homeowners facing foreclosure could sign a new note, collateralized by a special warranty deed. Stein envisioned that this note would be subordinate to the original mortgage, but would allow the homeowner to develop beneficial credit history through down payments and monthly payments to Real Estate Solutions. The beneficial credit history that resulted from monthly payments for a 12 month period would be attractive to potential mortgage buyers who would then step in and finance the short sales Real Estate Solutions negotiated with the original mortgage holders.

5. Acting on a Stevens directive, Real Estate Solutions falsely represented to several homeowners that they were required to purchase life insurance at refinancing closings as a condition of this deal in order to protect their new mortgage.

6. At some time after the spring of 2012, Stein knew that he and Stevens were deceiving those homeowners executing new notes when Stein and Stevens told homeowners that their residences would be placed in an "equity holding land trust" thereby giving the false impression that their homes would be safe from foreclosure while they made payments to Real Estate Solutions. There was no land trust. Most of the homeowner payments we received were used for the salaries and personal expenses of the defendants.

7. It was a part of the scheme to defraud that defendants Stein, Stevens, Hawkins and Caveny used third parties to contact homeowners and offer them an opportunity to get out of their present defaulted home loans and receive a new loan on their home with a reduced monthly payment and reduced interest rate on their loan. Stein would tell homeowners who were seeking a new loan that, unless the homeowner could cure their default with payment of all arrearages, or that the homeowner had negotiated an approved modification plan with the lender, any payments to the original lender/mortgage would not be credited against their mortgage obligation once their homes were in foreclosure. Stein would further state that mortgage payments to the original lender in the absence of an approved plan would not help the homeowner because the lenders would not accept them. Stein also told this homeowner to not act on any late notices but to forward them to Real Estate Solutions.

8. Stein and others working with him knew, or were willfully blind to the fact, that they were defrauding homeowners seeking new loans because they all knew that there was no equity-holding land trust and little chance that third party short-sale investors would step in to rescue the homeowner from foreclosure in a timely manner. Stein knew that the purpose of the Real Estate Solutions new loan "Angel Financing" plan, as charged in the indictment, was to lead homeowners to believe they had a new loan, that although subordinate to their mortgage, would buy time from foreclosure

9. Stein and Stevens also concealed from homeowners that the homeowner's distressed mortgage lender never consented to the homeowner making any payments on a new loan with Real Estate Solutions. And, although some investors or note buyers were

recruited, none materialized to purchase the new notes. So it was a further part of the scheme as charged that defendants Stein, Stevens, Hawkins and Caveny falsely represented to homeowners that the defendants had "investors standing by" who were ready and able to purchase the homeowner's present loan on a short sale from the lender holding the homeowner's current mortgage.  It was a further part of the scheme to defraud that defendants Stein, Stevens, Hawkins and Caveny falsely represented to each homeowner that the homeowner had the legal authority to transfer the homeowner's interest in their residence to the defendants through "special warranty deeds."

10.   On about September 14, 2012, Hawkins abruptly withdrew from Real Estate Solutions and began servicing a number of Real Estate Solutions homeowners through his newly-formed mortgage company, the ERealty Mortgage Group, LLC.  Stein had no dealings with those clients and received no compensation from Hawkins' ERealty Mortgage Group LLC dealings.

10.   The defendant agrees that the defendant committed all the essential elements of the offense.  This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count Two of the indictment.

**[REMAINDER OF PAGE BLANK, ONLY SIGNATURES FOLLOW]**

AGREED TO AND STIPULATED on this _____ day of March, 2018.


_____
MARK DEMETRI STEIN
Defendant


_____
ROBERT L. WEBSTER
Attorney for Defendant